**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Allison Hauler | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| *vs.* | : | |
| | : | |
| Encompass Health Rehabilitation | : | |
| Hospital of Reading, LLC and Encompass | : | |
| Health Corporation, | : | JURY TRIAL DEMANDED |
| *Defendants*. | : | |

**COMPLAINT**

## I.  PRELIMINARY STATEMENT

1.  This is an action for an award of damages, reinstatement, declaratory and injunctive relief, attorney's fees, and other relief on behalf of Plaintiff, Allison Hauler ("Plaintiff" or "Hauler") who has been harmed by Defendants' unlawful employment practices. Plaintiff is a former employee of Defendants, Encompass Health Rehabilitation Hospital of Reading, LLC and Encompass Health Corporation, (hereinafter "Defendants" and/or "Encompass").

2.  Plaintiff alleges that prior to and continuing through March 3, 2023, Defendants, through their agents, servants and employees, subjected Plaintiff to discrimination and retaliation on the basis of her actual and/or perceived disability and/or record of impairment (Anxiety and Major Depressive Disorder). Plaintiff further alleges that Defendants failed to sufficiently engage in the interactive process and likewise failed to provide Plaintiff with reasonable accommodations for her disabilities, adversely affecting the terms and conditions of her employment. Defendants further interfered with and/or retaliated against Plaintiff for her application for and use of medical leave, including protected leave. These acts were in violation of the Americans with Disabilities Act of 1990 ("ADA") and the Pennsylvania Human Relations Act ("PHRA") and the Family Medical Leave Act ("FMLA").

3.      This action is brought under the ADA, the PHRA and the FMLA.

## II.      JURISDICTION AND VENUE

4.   The original jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §1331 and 1391, as Plaintiff's claims are substantively based in the ADA and the FMLA.

5.   Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district.

6.   The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 to consider the Plaintiff's claims arising under the PHRA.

7.   All conditions precedent to the institution of this suit have been fulfilled.

8.   Specifically, Plaintiff filed timely Charge (No. 530-2023-05498) with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). The EEOC issued a right to sue on January 26, 2024. This action is filed within ninety (90) days of the Right to Sue.

## III.   PARTIES

9.   The Plaintiff Allison Hauler is a female individual, residing in the Commonwealth of Pennsylvania with a place of address located at 2729 Amberbrooke Lane, Dover, PA 17408.

10. Defendant, Encompass Health Rehabilitation Hospital of Reading, LLC is a Delaware limited liability company with a Rehabilitation Hospital located at 1623 Morgantown Road, Reading, Pennsylvania.

11. The Defendant Encompass Health Corporation is a large owner and operator of rehabilitation hospitals in the United States with a corporate address of 9001 Liberty Parkway, Birmingham, Alabama 35242. (Collectively referred to as "Defendants").

12. Upon information and belief, Defendants were joint employers of Plaintiff.

13. At all times material and relevant hereto, Plaintiff was a qualified individual capable of performing her duties as a Case Manager.

14. At all times material and relevant hereto, Defendants acted by and through their agents, employees, and/or servants, in subjecting Plaintiff to discrimination on the basis of her disability (Anxiety and Major Depressive Disorder), and by subjecting Plaintiff to retaliation for engaging in protected conduct in violation of the ADA, PHRA and FMLA and interference with medical leave under the FMLA.

## IV.  FACTUAL BACKGROUND

15. Plaintiff, a female individual, commenced employment with Defendants in or around January 2022.

16. At all relevant times, Plaintiff worked as a Case Manager. Plaintiff has a Master's Degree in Social Work.

17. At all relevant times Plaintiff performed her job duties in a satisfactory manner and received an excellent performance review for her job performance assessing her performance through June 30, 2022.

18. Plaintiff suffered from disabilities (Anxiety and Major Depressive Disorder), which she has treated through the appropriate providers for many years, including with prescription medication and counselling.

19. These medical conditions qualify as disabilities under the PHRA the Americans with Disabilities ("Act") as they affected her major life activities of thinking, working and sleeping; as well as impacting her brain and neurological systems.

20. Nevertheless, Plaintiff was fully capable of performing her job in an excellent

manner with reasonable accommodations.

21. When her anxiety flares, she suffers from physical symptoms, including, but not limited to, gastrointestinal distress.

22. As a result of her disabilities, and the related flare up of her gastrointestinal issues, Plaintiff missed several days of work during 2022.

23. Plaintiff regularly documented the reasons for her absences to her employer.

24. On or about December 6, 2022, she received a verbal warning for unplanned absences.

25. While Plaintiff found it difficult to tell her employer of her disabilities due to concern that she would be treated differently, she notified her supervisor after she received the verbal warning.

26. When Plaintiff came forward with information about her disabilities, Defendants failed to interact with her about reasonable accommodations and, upon information and belief, questioned why she had not come forward sooner.

27. Had Defendants needed disability related information, they could have followed the strict rules with regard to disability related medical inquires, which they did not do. See 42 USCA sec. 12112 (d).

28. After notifying her supervisor, Jenny Law, of her disabilities, Plaintiff had two necessary absences.

29. On or around December 13, 2023, Plaintiff was subjected to a vicious dog bite. Defendants fully acknowledged that Plaintiff could not work in the office with the injuries that she sustained. She was told "Do what you need to do." She missed two days of work.

30. In or around late 2023, Plaintiff lost three close family members, which further

triggered her anxiety and depression.

31.    On January 6, 2023, Plaintiff had a severe flare up of her anxiety triggered by the death of her aunt. She tried to go to work but could not do so. She obtained a doctor's note that the absence was related to her disabilities.

32.    Without any significant interaction, on January 9, 2023, Defendants placed Plaintiff on a ninety (90) day probationary period due to the unplanned absences on December 13, 2022 and January 6, 2023.

33.    Plaintiff became concerned as she was being disciplined for disability related absences and she applied for Family Medical Leave Act ("FMLA") intermittent leave through Defendants' third party provider, FMLA Source.

34.    On or about February 18, 2023, Plaintiff received notice of approval for FMLA intermittent leave for her Anxiety and Depression, which further retroactively excused the January 6, 2023 absence that triggered her probation.

35.    She was approved for intermittent leave for up to two episodes per month for periods of two days each through December 21, 2023.

36.    Plaintiff clearly notified Defendants of her disabilities both prior to her probation, and again when she applied for and received FMLA intermittent leave.

37.    On or about February 19, 2023, Plaintiff began to feel viral like symptoms and subsequently learned that two of her patients, who were roommates with each other, with whom she had direct contact, tested positive for Covid-19.

38.    On or about February 22, 2023, as a result of learning that her patients had Covid-19, Plaintiff took an at home Covid-19 test and tested positive. She verified the positive test results through a follow up test with a medical facility.

39. Plaintiff was not sure how to handle the positive test results, given her purported probationary status, and, therefore, sought guidance from her manager, Jenny Law ("Ms. Law").

40. On February 23, 2023, around 5:00 am, Plaintiff called Ms. Law and informed her of the positive Covid-19 tests. Plaintiff's primary concern was whether she should go to work and risk infecting other employees and/or patients. She expressed this concern to Ms. Law, as well as a willingness to work, either at home or in the workplace with restrictions.

41. Ms. Law told Plaintiff that she would reach out to Human Resources but that she did not think Plaintiff should come into work.

42. Not until later that day did Plaintiff hear from both Employee Health and Human Resources.

43. Lori Ruth ("Ms. Ruth") from Employee Health told her that she could technically return to work on February 24, 2023, based on the date she started to have symptoms, but also expressed that she did not think Plaintiff sounded well enough to work.

44. Martha Sydnor ("Ms. Sydnor") from Human Resources then contacted Plaintiff and specifically overruled Ms. Ruth's suggestion about return to work, stating that she should not return to work until symptom free for twenty-four (24) hours.

45. Ms. Sydnor also instructed Plaintiff to apply for workers' compensation but did not mention FMLA.

46. Plaintiff did apply for workers' compensation, which was ultimately rejected, because Defendants represented that she did not contract Covid-19 at work. She also applied for FMLA leave.

47. On Tuesday, February 28, 2023, Plaintiff returned to work and worked every day that week.

48. Early in the morning on Friday, March 3, 2023, Plaintiff met with CEO, Judy Parker, and her manager, Ms. Law, at their request. No person from Human Resources was present at the meeting.

49. CEO Parker expressed that they determined Plaintiff had not contracted Covid-19 at work and would not qualify for workers compensation.

50. At no point did Defendants explain that determination when Plaintiff's only known exposure to Covid-19 was through work.

51. At the meeting on March 3, 2023, CEO Parker terminated Plaintiff for an absence during her "probation" since she had not contracted Covid-19 at work. She further informed her that her benefits would end at midnight that night.

52. Plaintiff applied for FMLA for the Covid-19 sickness but did not receive a determination because of her termination.

53. Further, Defendants terminated Plaintiff on a discriminatory and retaliatory basis, directly based upon her disabilities (Anxiety and Major Depressive Disorder) and her requests for accommodations for said disabilities.

54. Defendants engaged in per se discrimination under the ADA and PHRA by subjecting Plaintiff to an adverse employment action for following Defendants' Covid-19 policy or practice.

55. Plaintiff was entitled under the ADA and PHRA to rely upon the same policies and practices available to other non-disabled employees for the Covid-19 illness.

56. Defendants' efforts to deny her access to policies and practices utilized by other non-disabled workers is discriminatory in and of itself.

57. Further, as Defendants had full knowledge that her "probationary" status resulted directly from her disabilities, they were required under the ADA and PHRA to engage in the

interactive process and consider reasonable accommodations before using her probationary status
as a reason for her termination.

58. The EEOC Guidance makes clear that:

> An employer may impose disciplinary action, consistent with its
> policies as applied to other employees, for attendance problems that
> occurred prior to a request for reasonable accommodation. However, if
> the employee's infraction does not merit termination but some lesser
> disciplinary action (e.g., a warning), and the employee then requests
> reasonable accommodation, the employer must consider the request and
> determine if it can provide a reasonable accommodation without
> causing undue hardship.

See Employer-Provided Leave and the Americans with Disabilities Act, Example 8,

https://www.eeoc.gov/laws/guidance/employer-provided-leave-and-americans-disabilities-act.

59. As Defendants were on notice that her probation was disability related, they were
required to interact with Plaintiff and provide reasonable accommodations that did not subject
them to undue hardship before subjecting her to adverse employment action for violations of the
probationary period.

60. When Plaintiff reached out to her manager, as well as Employee Health and Human
Resources, after she tested positive for Covid-19, she was clearly requesting a reasonable
accommodation as she did not want to go to work and expose workers and vulnerable patients to
her illness, but she also did not want to violate her "probation" through an absence.

61. Plaintiff suggested several options, including that she go to work with restrictions or
that she work from home.

62. As noted above, Human Resources directly mandated that she stay home until
symptom free from Covid-19 for twenty-four hours.

63. Yet, CEO Parker ignored this directive and terminated Plaintiff for following it,
without further interaction.

64. Accordingly, under the ADA and PHRA, Defendants discriminated against Plaintiff in using these disability related absences as the basis for her termination without further engaging in the interactive process or providing reasonable available accommodations.

65. In fact, despite notice of her disabilities, Defendants used these disability related absences, in conjunction with her Covid-19 mandated absences, as grounds for termination.

66. Further, upon information and belief, Defendants terminated Plaintiff for a pretextual reason.

67. Defendants expressly terminated an employee because of a legitimate Covid-19 absence, despite the likelihood that she would have spread Covid-19 to other employees and vulnerable populations of the hospital had she gone to work.

68. A policy or practice of terminating employees because of a legitimate Covid-19 absence, would clearly encourage employees to go to work while sick, or to hide positive Covid-19 tests.

69. Such a policy or practice suggests a reckless indifference to the spread of Covid-19 to other employees and vulnerable patients.

70. Due to the unlikely nature of such a policy in a health care facility during a global pandemic, Plaintiff believes and avers that the express rationale for her termination was clearly pretextual.

71. Defendants further ignored that Plaintiff interacted with her manager, with Employee Health and with Human Resources. None of the people she interacted with expressed that she should go to work with symptoms of Covid-19 and Human Resources directly informed her to wait to return to work.

72. Moreover, Defendants' stated reason for the termination does not make sense due to

the focus on workers' compensation job protection, whereas Plaintiff had FMLA leave time available.

73. Subsequently, Defendants interfered with her FMLA application.

74. Further, Defendants did not discuss Plaintiff's disabilities or reasonable accommodations although they were on full notice that Plaintiff's probationary status stemmed directly from disability related absences.

75. For the foregoing reasons, the proffered reason for termination was blatantly pretextual.

76. Furthermore, Defendants engaged in a pattern of antagonistic behavior by telling Plaintiff not to go to work then terminating her for same.

77. Defendants further retaliated against Plaintiff for engaging in protected conduct of seeking to address her disability related needs through reasonable accommodations and intermittent leave.

78. These actions by Defendants caused Plaintiff severe emotional distress, economic loss and other damages.

**Count I**
**ADA Disability Discrimination**
**(Anxiety and Major Depressive Disorder)**
**Hauler v. Defendants**

79. Plaintiff hereby incorporates by reference the foregoing paragraphs of her Complaint as though fully set forth herein.

80. At all relevant times, Plaintiff was a qualified person with a disability (Anxiety and Major Depressive Disorder) and Defendants acted through their agents, servants, and employees.

81. The actions of Defendants, through their agents, servants, and employees, in subjecting Plaintiff to discrimination on her terms, conditions, and privileges of employment

10

because of her actual and/or perceived disability and/or record of impairment (Anxiety and Major Depressive Disorder), constitute a violation of the ADA.

82. Despite notice of her disabilities, Defendants terminated Plaintiff without engaging in the interactive process, which is per se discrimination.

83. Defendants further directly violated the ADA in discriminating and/or retaliating against Plaintiff for notifying them about her disability subsequent to her hire although they did not previously follow ADA procedures to seek medical information.

84. By acting as aforesaid, Defendants directly discriminated against Plaintiff on the basis of her disability.

85. Defendants further treated her differently from similarly situated nondisabled employees, including, but not limited to, through failing to allow her access to the same Covid-19 policies and practices as non-disabled individuals.

86. Defendants ultimately terminated Plaintiff based upon her disability and/or constructively discharged her by failing to provide necessary, reasonable accommodations for her disability that would allow her to perform the essential functions of her job.

87. Through a constant pattern of disparate treatment based on Plaintiff's disability as evidenced by disability related probation, unlawful termination, and lack of proper accommodations, Plaintiff was treated differently from other non-disabled employees.

88. Defendants terminated and/or constructively discharged Plaintiff without engaging in the interactive process which has a disparate impact on employees with disabilities.

89. Defendants engaged in a pattern and practice of discriminatory and retaliatory behavior with regard to Plaintiff's disability.

90. Defendants stated reasons for Plaintiff's termination that were pretextual and Plaintiff's termination was ultimately based on her disability.

91. Through a constant pattern of disparate treatment based on Plaintiff's disability as evidenced by the disability related probation, unlawful termination, and lack of proper accommodations, Defendants engaged in discriminatory and retaliatory employment conduct ultimately interfering with Plaintiff's ability to perform her job and altering the terms and conditions of her employment.

92.  As a direct result of the unlawful and willful discriminatory and retaliatory employment practices engaged in by Defendants in violation of the ADA, Plaintiff has sustained permanent and irreparable harm, as well as substantial and severe emotional distress.

93. As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendants in violation of the ADA, Plaintiff has sustained a loss of earnings and benefits, plus the loss of future earning power, plus back pay, and interest due thereupon.

## Count II
### PHRA Disability Discrimination
### (Anxiety and Major Depressive Disorder)
### Hauler v. Defendants

94. Plaintiff hereby incorporates by reference the foregoing paragraphs of her Complaint as though fully set forth herein.

95. At all relevant times, Plaintiff was a qualified person with a disability (Anxiety and Major Depressive Disorder) and Defendants acted through their agents, servants, and employees.

96. The actions of Defendants, through their agents, servants, and employees, in subjecting Plaintiff to discrimination on her terms, conditions, and privileges of employment

12

because of her actual and/or perceived disability and/or record of impairment (Anxiety and Major Depressive Disorder), constitute a violation of the PHRA.

97. Despite notice of her disabilities, Defendants terminated Plaintiff without engaging in the interactive process, which is per se discrimination.

98. Defendants further directly violated the PHRA in discriminating and/or retaliating against Plaintiff for notifying them about her disability subsequent to her hire.

99. By acting as aforesaid, Defendants directly discriminated against Plaintiff on the basis of her disability.

100. Defendants further treated her differently from similarly situated nondisabled employees, including, but not limited to, through failing to allow her access to the same Covid-19 policies and practices as non-disabled individuals.

101. Defendants ultimately terminated Plaintiff based upon her disability and/or constructively discharged her by failing to provide necessary, reasonable accommodations for her disability that would allow her to perform the essential functions of her job.

102. Through a constant pattern of disparate treatment based on Plaintiff's disability as evidenced by disability related probation, unlawful termination, and lack of proper accommodations, Plaintiff was treated differently from other non-disabled employees.

103. Defendants terminated and/or constructively discharged Plaintiff without engaging in the interactive process which has a disparate impact on employees with disabilities.

104. Defendants engaged in a pattern and practice of discriminatory and retaliatory behavior with regard to Plaintiff's disability.

105. Defendants stated reasons for Plaintiff's termination that were pretextual and Plaintiff's termination was ultimately based on her disability.

13

106.    Through a constant pattern of disparate treatment based on Plaintiff's disability as evidenced by the disability related probation, unlawful termination, and lack of proper accommodations, Defendants engaged in discriminatory and retaliatory employment conduct ultimately interfering with Plaintiff's ability to perform her job and altering the terms and conditions of her employment.

107.    As a direct result of the unlawful and willful discriminatory and retaliatory employment practices engaged in by Defendants in violation of the PHRA, Plaintiff has sustained permanent and irreparable harm, as well as substantial and severe emotional distress.

108.    As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by the Defendants in violation of the PHRA, Plaintiff has sustained a loss of earnings and benefits, plus the loss of future earning power, plus back pay, and interest due thereupon.

**Count III**
**ADA Failure to Accommodate/**
**Failure to Sufficiently Engage in the Interactive Process**
**(Anxiety and Major Depressive Disorder)**
**Hauler v. Defendants**

109.    Plaintiff hereby incorporates by reference the foregoing paragraphs of her Complaint as though fully set forth herein.

110.    Defendants failed to reasonably accommodate Plaintiff or engage in the interactive process with her and/or failed to provide the agreed upon reasonable accommodation.

111.    Specifically, Defendants were placed on notice that Plaintiff required intermittent medical leave and/or excuse of absences on a periodic basis due to her disability yet placed her on probation for prior disability related absences.

112.    When Plaintiff contracted Covid-19, she attempted to interact with Defendants about a reasonable accommodation when she requested that Defendants approve her absence with Covid-19 and/or permit her to work from home and/or to go to work with restrictions.

113.    Defendants actually approved this reasonable accommodation and informed her that she should not return to work until she recovered from the Covid-19.

114.    Yet, Defendants then used the probation as an excuse to terminate Plaintiff when she was absent after she contracted Covid-19.

115.    Defendants could have easily provided Plaintiff with a reasonable accommodation of an excused absence for her Covid-19 illness and/or required her to go to work with restrictions.

116.    Defendants had a duty under the ADA to assess whether they could accommodate her Covid-19 absence prior to terminating her as they had medical information linking her absences to her disabilities.

117.    As a direct result of the unlawful and willful discriminatory and retaliatory employment practices engaged in by Defendants in violation of the ADA, Plaintiff has sustained permanent and irreparable harm, as well as substantial and severe emotional distress.

118.    As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by Defendants in violation of the ADA, Plaintiff has sustained a loss of earnings and benefits, plus the loss of future earning power, plus back pay, and interest due thereupon.

**Count IV**
**PHRA Failure to Accommodate/**
**Failure to Sufficiently Engage in the Interactive Process**
**Hauler v. Defendants**

119.  Plaintiff hereby incorporates by reference the foregoing paragraphs of her Complaint as though fully set forth herein.

120.  Defendants failed to reasonably accommodate Plaintiff or engage in the interactive process with her and/or failed to provide the agreed upon reasonable accommodation.

121.  Specifically, Defendants were placed on notice that Plaintiff required intermittent medical leave and/or excuse of absences on a periodic basis due to her disability yet placed her on probation for prior disability related absences.

122.  When Plaintiff contracted Covid-19, she attempted to interact with Defendants about a reasonable accommodation when she requested that Defendants approve her absence with Covid-19 and/or permit her to work from home and/or to go to work with restrictions.

123.  Defendants actually approved this reasonable accommodation and informed her that she should not return to work until she recovered from the Covid-19.

124.  Yet, Defendants then used the probation as an excuse to terminate Plaintiff when she was absent after she contracted Covid-19.

125.  Defendants could have easily provided Plaintiff with a reasonable accommodation of an excused absence for her Covid-19 illness and/or required her to go to work with restrictions.

126.  Defendants had a duty under the PHRA to assess whether they could accommodate her Covid-19 absence prior to terminating her as they had medical information linking her absences to her disabilities.

127.  As a direct result of the unlawful and willful discriminatory and retaliatory employment practices engaged in by Defendants in violation of the PHRA, Plaintiff has sustained permanent and irreparable harm, as well as substantial and severe emotional distress.

128.  As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by Defendants in violation of the PHRA, Plaintiff has sustained a loss of earnings and benefits, plus the loss of future earning power, plus back pay, and interest due thereupon.

**Count V**
**(ADA, PHRA)**
**Retaliation pattern of antagonism**
**Hauler v. Defendants**

129.    Plaintiff hereby incorporates by reference the foregoing paragraphs of her Complaint as though fully set forth herein.

130.    Plaintiff engaged in protected activity in informing Defendants of her disability, letting them know it was difficult for her to discuss her disability, and seeking intermittent medical leave.

131.    Plaintiff experienced retaliation in relation to requesting an accommodation and/or for engaging in protected activity.

132.    Specifically, Defendants directly took adverse employment action by placing her on probation and ultimately by terminating her employment.

133.    Defendants further engaged in a pattern of antagonistic behavior by telling her to stay home from work with Covid-19 absence and then terminating her for violating her disability related probation.

17

134.  As a direct result of the unlawful and willful discriminatory and retaliatory employment practices engaged in by Defendants in violation of the ADA and PHRA, Plaintiff has sustained permanent and irreparable harm, as well as substantial and severe emotional distress.

135.  As a further direct result of the aforesaid unlawful discriminatory and retaliatory employment practices engaged in by Defendants in violation of the ADA and PHRA, Plaintiff has sustained a loss of earnings and benefits, plus the loss of future earning power, plus back pay, and interest due thereupon.

## COUNT VI
### FMLA – Interference and Retaliation
### Hauler v. Defendants

136.    Plaintiff hereby incorporates by reference the foregoing paragraphs of his Complaint as though fully set forth herein.

137.    Plaintiff required and requested FMLA leave in relation to the aforementioned serious medical conditions.

138.    Defendants retaliated against the Plaintiff in relation to her exercise of her FMLA rights.

139.    Directly after Plaintiff requested FMLA leave, Defendants terminated her for a Covid-19 absence.

140.    Further, Defendants did not allow time for Plaintiff to seek to excuse the Covid-19 absence although she had FMLA leave available.

141.     The aforesaid actions of the Defendants were willful, wonton, reckless and/or negligent, and/or in bad faith and in reckless disregard of the Plaintiff's rights.

142.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendants, Plaintiff has sustained a loss of earnings and a loss of benefits.

**Count VII**
**Wrongful Discharge**
***Hauler v. Defendants***

143.    Plaintiff incorporates the foregoing paragraphs as though fully set forth here at length.

144.    Plaintiff required time to quarantine from work due to COVID-19 in accordance with Pennsylvania public policy.

145.    In retaliation therefor, Defendants terminated Plaintiff's employment.

146.    Plaintiff has suffered damages from Defendants' conduct including compensatory damages, severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor against the Defendants, and order that:

a.    Defendants reinstate Plaintiff in her former position;

b.    Defendants compensate Plaintiff with a rate of pay and other benefits and emoluments of employment, to which she would have been entitled, had she not been subjected to unlawful discrimination (all Counts);

c.    Defendants compensate Plaintiff with an award of back pay (all Counts);

d.    Defendants compensate Plaintiff with an award of front pay, if appropriate (all Counts);

e.    Defendants pay Plaintiff punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as allowable (all Counts);

f.     Defendants pays to Plaintiff pre- and post-judgment interests, costs of

suit, and attorney fees as allowed by law (all Counts); and

g.     The Court award other such relief as is deemed just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


**HENNESSY LAW**

*s/Kay Hennessy Seven, Esq.*

Date:  March 27, 2024              _____

KAY HENNESSY SEVEN, ESQUIRE
I.D. NO.: 77262
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Phone: 484-875-3111
kay@Hennessylawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Allison Hauler | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| *vs.* | : | |
| | : | |
| Encompass Health Rehabilitation | : | |
| Hospital of Reading, LLC and Encompass | : | |
| Health Corporation, | : | JURY TRIAL DEMANDED |
| *Defendants.* | : | |

## <u>VERIFICATION</u>

I, Allison Hauler, hereby verify that the averments in the attached Plaintiff are true and

correct to my personal information and belief.

ID P33xxjdwjXgdwmjQTdWhtJvz

_____

Allison Hauler

3/27/2024

# eSignature Details

---

**Signer ID:**        **P33xxjdwjXgdwmjQTdWhtJvz**
Signed by:            Allison Hauler
Sent to email:        ahauler94@gmail.com
IP Address:           172.59.137.57
Signed at:            Mar 27 2024, 10:34 am EDT